IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MUSTAFA-EL K.A. AJALA
formerly known as Dennis E. Jones-El,

           OPINION and ORDER

       Plaintiff,

           13-cv-638-bbc

     v.

WILLIAM SWIEKATOWSKI, GARY BOUGHTON,
PATRICK BRANDT, MICHAEL DELVAUX
and WILLIAM POLLARD,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In 2007, pro se prisoner Mustafa-El K.A. Ajala was transferred from the Green Bay Correctional Institution to the Wisconsin Secure Program Facility and placed in segregation after prison officials found that plaintiff had circulated a memorandum in which prisoners were threatening to "strike" from their prison jobs, classes and programs if officials did not meet a long list of demands about improving prison conditions.  In addition, officials found that plaintiff's memorandum was related to a conspiracy to start a riot at the prison. Although no riot occurred, officials placed the Green Bay prison on lockdown for at least three months in response to the threat.

In this case, plaintiff is proceeding on claims that defendants disciplined him in retaliation for complaining about prison conditions and because he is a Muslim and an African American.  In addition, plaintiff says that the hearing officers at his disciplinary

1

hearing were biased. Defendants have moved for summary judgment on all of plaintiff's claims. Dkt. #33.

I conclude that plaintiff has raised a genuine issue of material fact with respect to his claim that defendant William Swiekatowski issued him a conduct report because of his race and religion. Accordingly, I am denying the motion for summary judgment as to that claim. However, I am granting the motion in all other respects. First, I agree with defendants that the memorandum plaintiff circulated is not protected speech under the First Amendment in the prison context, so even if plaintiff is correct that the memorandum was a motivating factor in defendants' decision to discipline him, he cannot prevail on his retaliation claim. In addition, I agree with defendants that plaintiff's due process claim is barred by a state court decision that resolved the same claim and that, even if the claim is not barred procedurally, plaintiff has failed to adduce evidence from which a reasonable jury could find that the hearing officers (defendants Michael Delvaux and Patrick Brandt) were biased against him.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

## UNDISPUTED FACTS

On February 5, 2007, prison staff at the Green Bay Correctional Institution confiscated a document that plaintiff Mustafa-El K.A. Ajala wrote that he titled "Prisoner Legal Memorandum." Plaintiff used prison grievance forms to prepare much of the

document, typing the words "group complaint" at the top of each page.  In the document, plaintiff complained about numerous prison conditions, including medical and mental health treatment, sanitation, disciplinary policies, recreation and visitation.  He demanded improvements on each of these matters, such as new protocols for emergency medical problems, more out-of-cell time, reduced double-celling, less-restrictive segregation conditions, appointment of an oversight committee for disciplinary decisions and an increase in pay for prisoner work.  In addition, he requested a number of expanded privileges, such as smoking, cable television, exercise equipment and free stamped envelopes.  Plaintiff stated that, if these demands were not met, "it is Our request to be exempted from DOC 303.61-62 (or have them nullified), so that We may STRIKE FROM ALL WORK AND/OR SCHOOL/PROGRAM ASSIGNMENTS" for one month.  If prison officials still refused to meet the demands, "then it is our desire to STRIKE again for a period of 90 days."  The end of the document included several pages of lines for prisoners to sign.  More than 100 prisoners of different races, including Caucasian, Latino, Asian American, Native American and African American, signed the petition.

After confiscating this document, prison staff conducted an investigation.  On February 9, 2007, the prison was placed on lockdown status after staff concluded that prisoners were placing staff names on a "hit list" and planning to take hostages.  The same day, defendant William Pollard (the warden) transferred plaintiff to the Wisconsin Secure Program Facility as part of the group involved in circulating the "Prisoner Legal Memorandum."

The lockdown lasted "three to four months."  Dfts.' PFOF ¶ 15, dkt. #74.

On February 19, 2007, defendant William Swiekatowaski (a supervising officer) interviewed plaintiff.  During that interview, Swiekatowski made the following statements: (1) plaintiff's memorandum "has nothing to do with why we're on lockdown"; (2) "nobody's in trouble for signing" the memorandum; (3) plaintiff had a "right" to sign the memorandum; (4) the problem was that plaintiff gave the memorandum to the "wrong people"; and (5) other prisoners were "redoing" the memorandum.

On May 22, 2007, defendant Swiekatowaski issued a seven-page conduct report to plaintiff, alleging that plaintiff was involved in conspiring to commit a battery (in violation of Wis. Admin. Code § DOC 303.12), conspiring to incite a riot (in violation of Wis. Admin. Code § DOC 303.18) and engaging in group resistance and petitions (in violation of Wis. Admin. Code § DOC 303.20).  In the conduct report, Swiekatowski described the content of the "Prisoner Legal Memorandum" and stated that it was "contrary to the Administrative Code."  In addition, he stated that interviews with various prisoner confidential informants led him to conclude that plaintiff was "acting in concert with other inmates in an attempt to organize a riot at this institution."  In the report, Swiekatowski accused many prisoners of different races of engaging in the same type of conduct.

Defendant Swiekatowski issued seven prisoners conduct reports for activity related to the memorandum.  Six of the prisoners were African-American; one was Caucasian. (Plaintiff says that the Caucasian prisoner and all the other accused prisoners were Muslims. Plt.'s Aff. ¶ 7, dkt. #68.)

Defendant Gary Boughton, the security director, reviewed the conduct report and determined that it should be allowed to proceed as a major offense to a disciplinary hearing.

On June 27, 2007, a disciplinary hearing was held before defendants Patrick Brant and Michael Delvaux.  In a 9-page decision dated June 27, 2007, Delvaux and Brandt explained their reasons for finding plaintiff guilty of violating Wis. Admin. Code §§ DOC 303.12(c) and 303.18(c) and for giving plaintiff 360 days' disciplinary separation as discipline. Dkt. #38-1.  (Delvaux and Brandt found plaintiff not guilty of violating the rule against unauthorized group petitions, § DOC 303.20, even though they found that the memorandum "cannot be considered an inmate group complaint."  They did not explain this discrepancy or otherwise explain why they found him not guilty of that charge.)

Delvaux and Brandt relied on a number of confidential informant statements to conclude that the memorandum was "a major component of a larger, planned disturbance in which the taking of hostages and assaults on staff and inmates were going to be carried out." In particular, they discussed the following informant statements:

- some prisoners circulating the petition were talking about "getting" the security director;

- members of security threat groups who had signed the petition were talking about fighting with the police;

- prisoners signing the petition were waiting to "whoop" the security director;

- if prison officials did not agree to the demands, Muslim prisoners were prepared to "role-out" against security staff.

5

According to Delvaux's and Brandt's decision, various other confidential informants spoke about assaulting staff and taking hostages and three of the informants identified plaintiff as being part of the conspiracy.  Delvaux and Brandt found the statements credible because they were sworn and because the prisoners had nothing to gain by making the statements and put themselves at risk in doing so.  (I have considered the summaries of the confidential informant statements because those summaries were part of the disciplinary decision provided to plaintiff, but I did not consider the statements themselves because those have not been provided to plaintiff.  To the extent defendants wish to rely on the confidential informant statements at trial, they will need to file a motion in limine on that issue.)

In addition to the statements, Delvaux relied on the pass list for the law library, which he said "clearly indicates that [plaintiff] and other inmates that have been identified and charged with being leaders of the planned disturbance were frequently in the library at the same time."

On September 7, 2007, defendant Pollard affirmed the decision in relevant respects.

OPINION

A.  Retaliation

Plaintiff's first claim is that defendants punished him, not because they believed he was involved in a conspiracy to start a riot, but because of the memorandum he filed about prison conditions.  To prevail on a retaliation claim, a plaintiff must prove three things:  (1)

6

he was engaging in activity protected by the Constitution; (2) the defendant's conduct was sufficiently adverse to deter a person of "ordinary firmness" from engaging in the protected activity in the future; and (3) the defendant subjected the plaintiff to adverse treatment because of the plaintiff's constitutionally protected activity.  Gomez v. Randle, 680 F.3d 859, 866-67 (7th Cir. 2012); Bridges v. Gilbert, 557 F.3d 541, 555-56 (7th Cir. 2009). In their motion for summary judgment, defendants' sole argument with respect to this claim is that plaintiff's memorandum is not protected by the Constitution.  Accordingly, I will not consider the other two elements in this order.

In his brief, plaintiff cites a number of cases for the proposition that a prisoner has a First Amendment right to complaint about prison conditions in a grievance.  E.g., Hoskins v. Lenear, 395 F.3d 372 (7th Cir. 2005); DeWalt v. Carter, 224 F.3d 607 (7th Cir. 2000). Those cases are not instructive because the defendants do not deny that plaintiff had a right to file a grievance.  The question in this case is whether the *content* of the grievance is protected as well as the way in which plaintiff complained about his prison conditions. Watkins v. Kasper, 599 F.3d 791 (7th Cir. 2010) (prisoner has "a general First Amendment right to criticize [prison] policies," but "he must do so in a manner consistent with his status as a prisoner").  In particular, the question is whether plaintiff had a First Amendment right to encourage all Green Bay prisoners to stop working, going to classes and participating in programs for up to three months unless prison officials complied with a long list of demands. If the answer is no, then plaintiff cannot immunize himself from discipline simply by putting the speech in a prison grievance.  E.g., Hasan v. United States Dept. of Labor, 400 F.3d

1001, 1005 (7th Cir. 2005) (false allegations not protected simply because they are part of grievance); Hale v. Scott, 371 F.3d 917 (7th Cir. 2004) (same).

Outside the prison context, there are many situations in which a threat to strike would be protected by the First Amendment or other federal law.  Lyng v. International Union, United Auto., Aerospace & Agriculture Implement Workers of America, UAW, 485 U.S. 360, 366 (1988) ("[O]ne of the foundations of our society is the right of individuals to combine with other persons in pursuit of a common goal by lawful means, and our recognition of this right encompasses the combination of individual workers together in order better to assert their lawful rights.") (internal quotations and citations omitted); Board of Railroad Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 385 (1969)("State courts may not enjoin a peaceful strike by covered railway employees, no matter how economically harmful the consequences may be."); Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 475 (1955) ("Congress ha[s] guaranteed under s 7 of the Taft-Hartley Act—the right to strike peacefully to enforce union demands for wages, hours and working conditions."); Aurora Education Association v. Board of Education of Aurora Public School District No. 131 of Kane County, Illinois, 490 F.2d 431, 434 (7th Cir. 1973) (striking down policy prohibiting support for right to strike).

However, it is well established that speech restrictions in prison are not subject to the same standard of review as other speech restrictions because courts must give more deference to the judgment of prison officials.  In particular, a restriction on speech in prison may be upheld under the First Amendment if the restriction is reasonably related to a legitimate

8

penological interest.  <u>Turner v. Safley</u>, 482 U.S. 78 (1987).  In determining whether a reasonable relationship exists, the Supreme Court usually considers four factors: whether there is a "valid, rational connection" between the restriction and a legitimate governmental interest; whether alternatives for exercising the right remain to the prisoner; what impact accommodation of the right will have on prison administration; and whether there are other ways that prison officials can achieve the same goals without encroaching on the right.  <u>Id.</u> at 89.

In debating whether plaintiff's memorandum is protected speech under the <u>Turner</u> standard, the parties get off on the wrong foot by focusing on the question whether the memorandum qualified as a group inmate complaint under Wis. Admin. Code ch. DOC 310. That issue was important during the disciplinary process because plaintiff was charged with violating the rule against "group resistance and petitions" and group inmate complaints that comply with chapter 310 do not violate that rule.  Wis. Admin. Code § DOC 303.24(2)(c). (Since 2007, the rule on group resistance and petitions has been renumbered from § DOC 303.20 to § DOC 303.24.)  However, the issue is not important in the context of this lawsuit because the question is not whether plaintiff's discipline was consistent with state regulations but rather whether the discipline was consistent with the First Amendment.  As plaintiff points out, prison officials may not retaliate against a prisoner simply for failing to follow the procedural rules for submitting a grievance, <u>Walker v. Thompson</u>, 288 F.3d 1005, 1009 (7th Cir. 2002), so the focus of this opinion is on the content of the grievance rather than its form.

9

Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119 (1977), is the leading case on the First Amendment rights of prisoners to engage in group speech.  In that case, the Court considered rules restricting the prisoners' ability to form a union, including prohibitions on union meetings and soliciting members.  In upholding these rules, the Court stated that the right of association is "necessarily curtailed" in the prison context, both because the nature of prison is to limit an individual's association with others and because "the operational realities of a prison dictate restrictions on the associational rights among inmates." Id. at 125-26.   A prisoner union "would rank high on anyone's list of potential trouble spots," the Court stated, because "the focus [of a union] is on the presentation of grievances to, and encouragement of adversary relations with institution officials." Id. at 133.

The Court credited the testimony of prison officials that "the concept of a prisoners' labor union was itself fraught with potential dangers" and "will naturally result in increasing the existing friction" between prisoners and staff as well as union prisoners and nonunion prisoners. Id. at 126.  Among the potential problems predicted by officials were "[w]ork stoppages" and "[r]iots." Id. at 127.  Although officials did not cite any evidence to support their fears beyond their own testimony, the Court concluded that it was "not irrational" for officials to believe that "concerted group activity, or solicitation therefor, would pose additional and unwarranted problems and frictions in the operation of the State's penal institutions." Id. at 129.

Jones forecloses plaintiff's First Amendment claim.  If it is permissible for prison

officials to ban group activity because of a *risk* of a work stoppage at some point in the future, then it is also permissible for officials to discipline prisoners for *threatening* not only a prison-wide work stoppage for several months, but also a boycott of classes and programming.  This conclusion is consistent with other cases decided since Jones.  Pilgrim v. Luther, 571 F.3d 201, 205 (2d Cir. 2009) ("Work stoppages are deliberate disruptions of the regular order of the prison environment and are a species of 'organized union activity.' They are plainly inconsistent with legitimate objectives of prison organization. Entreaties to such activity, like petitions protesting prison conditions, are not entitled to First Amendment protection where other less disruptive means of airing grievances are available."); Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) ("[A prisoner] has no constitutional right to organize a prison work slowdown.").

Although defendants rely on Jones in their brief, plaintiff ignores that case in his response.  Further, he does not argue that he has a right to threaten a work stoppage in the prison.  Instead, he says that the memorandum did not include a threat to stop working; rather, he says that the memorandum simply "requested relief from work."  That is not a persuasive distinction.  Although it is true that plaintiff used the word "request" in the memorandum, he also stated in all capital letters that the prisoners may "STRIKE FROM ALL WORK AND/OR SCHOOL/PROGRAM ASSIG[N]MENTS."  Dkt. #38-2.  By definition, a "strike" is an action that takes place without the employer's permission. Regardless whether plaintiff used more cautious language elsewhere in the memorandum, it would be reasonable for officials and other prisoners to construe the memorandum as an

attempt to encourage other prisoners to participate in a work stoppage.  Van den Bosch v. Raemisch, 658 F.3d 778, 787 (7th Cir. 2011) ("The essential question is not whether the threats were eventually carried out, but whether plaintiff has shown that it was not reasonable for defendants to perceive the [speech] as a potential threat to rehabilitation and security.").

Alternatively, plaintiff points to statements that defendant Swiekatowski made to plaintiff during the investigation of the conduct report.  In particular, Swiekatowski stated that plaintiff was not "in trouble for signing" the memorandum and that he had a "right" to sign the memorandum.  Even if I construe Swiekatowski's statements as expressing an opinion that plaintiff had a right to include language about a strike in his memorandum, Swiekatowski's opinion on that issue is irrelvant.  Under Hammer v. Ashcroft, 570 F.3d 798, 803 (7th Cir. 2009), the question whether a prisoner's speech or conduct is protected by the First Amendment is "an objective inquiry."  Thus, an individual defendant's subjective views have no bearing on the case.

Finally, plaintiff says that he had no alternative means of exercising his right to complain about prison conditions, but that is obviously incorrect.  Plaintiff could have complained about the same prison conditions without threatening to stop all prisoner work and programming.

In sum, I conclude that plaintiff's memorandum is not protected by the First Amendment.  Thus, even if the charges against plaintiff are a pretext for retaliating against plaintiff for writing the memorandum, plaintiff cannot prevail on this claim.

B.  <u>Discrimination</u>

Plaintiff's second claim is that defendants targeted him for discipline because of his race (African American) and religion (Muslim).  Both sides assume that the Constitution would prohibit discrimination in this context. <u>Johnson v. California</u>, 543 U.S. 499, 515 (2005)(strict scrutiny applies to race discrimination in prison); <u>Maddox v. Love</u>, 655 F.3d 709, 719-20 (7th Cir. 2011) ("Prisons cannot discriminate against a particular religion except to the extent required by the exigencies of prison administration."). The question raised by defendants' motion for summary judgment is whether plaintiff has adduced sufficient evidence to allow a reasonable jury to find that defendants were motivated by plaintiff's race or religion.

Plaintiff's primary argument on this claim is that all of the seven prisoners charged with misconduct related to the memorandum and alleged riot are Muslims and all but one of them are African American, even though, in plaintiff's conduct report, defendant Swiekatowski accused a number of prisoners of different races of misconduct similar to plaintiff's.  It is well established that different treatment of similarly situated individuals is probative evidence of discriminatory intent.  <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 80 (1998)("The critical issue [in a discrimination case] is whether members of one [protected group] are exposed to disadvantageous terms or conditions . . . to which members of [an]other [group] are not exposed."); <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 258–59 (1980) ("[T]he plaintiff's task [in a discrimination case] is to demonstrate that similarly situated [individuals] were not treated equally."); <u>Baker v.</u>

13

Macon Resources, Inc., 750 F.3d 674, 677-78 (7th Cir. 2014) (defendant's failure to investigate allegations of similar misconduct by others supports finding that defendant's discipline of plaintiff was discriminatory); Filar v. Board of Education of City of Chicago, 526 F.3d 1054, 1061 (7th Cir. 2008) ("All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination.").

Defendants do not deny that many prisoners of different races were implicated by Swiekatowski in plaintiff's conduct report and that those prisoners were accused of misconduct similar to plaintiff's alleged misconduct.   In addition, defendants do not deny that Swiekatowaki chose not to even interview many of the prisoners alleged to be involved in the conspiracy.   Dfts.' Resp. to Plt.'s PFOF ¶ 141, dkt. #74. The only difference that defendants identify between plaintiff and these other prisoners is that the evidence against the other prisoners was weaker than the evidence against plaintiff.   Dfts.' PFOF ¶¶ 62 and 65-66, dkt. #74.   However, defendants do not describe the evidence Swiekatowski had against the other prisoners; they do not explain why Swiekatowski believed that the evidence against plaintiff was stronger; and they do not respond to plaintiff's argument that the evidence against both him and the other prisoners was similar in that it consisted primarily of statements by confidential informants.   Further, even if I assume that Swiekatowski gathered more evidence against plaintiff, that would not explain why defendant Swiekatowski did not even interview the other prisoners while he was investigating the allegations.   Although it may be that a fuller record will show that Swiekatowski had

nondiscriminatory reasons for his actions, on the current record, defendant Swiekatowski is not entitled to summary judgment on this claim.

Alternatively, defendants argue that plaintiff cannot prove discriminatory intent because one of the charged prisoners was Caucasian and some African Americans were not charged even though they were "on the original list of subjects identified as potentially having substantial involvement with circulating the petition." Dfts.' PFOF ¶ 63, dkt. #74. However, this argument is not persuasive for multiple reasons. To begin with, it applies only to the race discrimination claim. Second, defendants provide no details about the African Americans who were not charged, such as the nature of the allegations against them or the specific reasons why they were not charged, so it is impossible to tell whether those prisoners are similarly situated to plaintiff. In fact, defendants did not submit a copy of the list or even identify the names of the prisoners. A conclusory statement that defendant Swiekatowaski did not charge all African American prisoners who could have been charged is not enough to defeat a discrimination claim at the summary judgment stage. Finally, the Court of Appeals for the Seventh Circuit has stated on a number of occasions that a defendant cannot defeat a discrimination claim simply by pointing to isolated incidents in which discrimination did not occur. Whitfield v. International Truck & Engine Corp., 755 F.3d 438, 444 (7th Cir. 2014) ("[A] singular instance of [the defendant] hiring a black electrician . . . does not entitle [the defendant] to immunity from subsequent discrimination allegations."); Diaz v. Kraft Foods Global, Inc., 653 F.3d 582, 587-88 (7th Cir. 2011) (rejecting argument that "the evidence did not support an inference of discrimination

15

because at least one Hispanic employee was not discriminated against in the same way" as plaintiff alleged).  See also Connecticut v. Teal, 457 U.S. 440, 455 (1982) ("Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group.").

Defendants raise a qualified immunity defense for plaintiff's retaliation claim and his due process claim, but they do not deny that it is clearly established that prison officials may not discriminate against prisoners on the basis of race or religion.  Johnson, 543 U.S. at 515; Maddox, 655 F.3d at 719-20.   Accordingly, plaintiff's discrimination claim against defendant Swiekatowski may proceed to trial.

Although plaintiff alleges that all of the defendants discriminated against him, it is undisputed that defendant Swiekatowski was the only person who was involved in the decision to issue plaintiff's conduct report.  Although defendant Boughton reviewed the conduct report and allowed it to go forward, plaintiff cites no evidence that Boughton was involved in deciding whether other prisoners should receive conduct reports or that Boughton had any reason to believe that the conduct report against plaintiff was discriminatory.  Further, plaintiff does not develop an argument or cite any evidence showing that the other defendants acted with discriminatory intent.  Accordingly, I am dismissing this claim as to all defendants other than Swiekatowski.


C.  Due Process

Plaintiff's final claim is that defendant Delvaux was biased against him at his

16

disciplinary hearing, violating his right to due process. Although plaintiff brought this claim against both defendants Delvaux and Brandt, the arguments in plaintiff's brief are devoted solely to Delvaux, so I assume that he has abandoned his claim against Brandt.

The threshold question is whether plaintiff's claim is barred by a decision on a writ of certiorari that he filed in state court. State ex rel. Jones-El v. Raemisch, No. 08-cv-1214 (Dane Cty. Cir. Ct. Apr. 26, 2010). In that case, plaintiff raised a claim that his right to due process was violated at the disciplinary hearing because defendant Delvaux was not an impartial decision maker. The circuit court rejected that claim, stating that "there does not appear to be any evidence that the members of the [disciplinary] committee were swayed by improper considerations." Dkt. #34-3 at 7. Defendants argue that plaintiff's due process claim in this case is nothing but an attempt to overturn the state court decision, which is not something this court has the authority to do. Skinner v. Switzer, 131 S. Ct. 1289, 1297 (2011) (federal district courts lack jurisdiction over "cases brought by state-court losers inviting district court review and rejection of the state court's judgments") (alterations omitted) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)); Dookeran v. County of Cook, Illinois, 719 F.3d 570, 574-75 (7th Cir. 2013) ("[L]ower federal courts lack subject-matter jurisdiction over actions that seek review of state-court judgments."); Tully v. Barada, 599 F.3d 591, 594 (7th Cir. 2010) ("[The law] denies federal jurisdiction to plaintiffs seeking to set aside a state court's judgment."); Hukic v. Aurora Loan Services, 588 F.3d 420, 431 (7th Cir. 2009) ("[T]he [law] prevents a party from effectively trying to

appeal a state-court decision in a federal district or circuit court."). Although plaintiff has not styled his due process claim as an appeal of the state court judgment, that is not required if the effect of plaintiff's success on this case would require overturning that judgment. Johnson v. Orr, 551 F.3d 564, 568 (7th Cir. 2008).

Plaintiff says that his due process claim should not be barred for two reasons, but neither reason is compelling. First, he says that he did not appeal the state court judgment, but that is irrelevant. The question is whether plaintiff had a reasonable opportunity to present his claim to the state courts. Gilbert v. Illinois State Board of Education, 591 F.3d 896, 901-02 (7th Cir. 2010). Plaintiff does not allege that defendants or anyone else prevented him from appealing the state court judgment, so his decision not to do so means that he is stuck with that judgment. It does not give him the right to file an "appeal" in this court.

Second, plaintiff cites the statement in Johnson v. Pushpin Holdings, LLC, 748 F.3d 769, 773 (7th Cir. 2014), that "[t]he rule [against federal district court review of a state court judgment] does not bar a federal suit that seeks damages for a fraud that resulted in a judgment adverse to the plaintiff." Plaintiff says that the exception to the rule applies to this case because he is alleging that "defendants fabricated evidence against him." Plt.'s Br., dkt. #67, at 7. However, plaintiff's argument is that defendants fabricated evidence *at his disciplinary hearing*; he does not argue that defendants "misled the court into issuing the judgment," Johnson, 748 F.3d at 773, let alone cite any evidence supporting this view. Although plaintiff may believe that defendants committed a fraud on the court by continuing

18

to rely on what he says is fabricated evidence, he had an opportunity to make that same argument to the circuit court.

Even if I assumed that the state court judgment does not bar plaintiff's due process claim, I would conclude that the claim fails on the merits.  In this circuit, "the requirement of impartiality mandates the disqualification of an official who is directly involved in the incident or is otherwise substantially involved in the incident but does not require the disqualification of someone tangentially involved." Merritt v. De Los Santos, 721 F.2d 598, 601 (7th Cir. 1983).  In his brief, plaintiff points to several reasons for questioning defendant Delvaux's ability to be an impartial decision maker, but none of these reasons are persuasive.

First, plaintiff says that defendant Delvaux was the "acting security director" in February 2007, which created a conflict of interest because one of the confidential informants allegedly stated that some prisoners were talking about "getting" the "Security Director."  However, it is undisputed that defendant Boughton was the security director of the Green Bay prison between October 2000 and September 2007, Plt.'s Resp. to Dft.'s PFOF ¶ 3, dkt. #74, which includes the time period relevant to this case.  In support of his allegation that defendant Delvaux was the "acting security director" in February 2007, plaintiff cites an incident report that Delvaux signed under the heading "signature of security director." Dkt. #68-1.  Delvaux says that he simply was acting as the security director's designee, Dft.'s PFOF ¶ 107, dkt. #74, which is supported by the fact that Delvaux wrote that a copy of the incident report should be sent to "Sec. Dir." Dkt. #68-1.  In any event,

plaintiff cites no evidence that the confidential informant was referring to Delvaux rather than Boughton or, more important, that Delvaux believed the informant was referring to him.  Even if Delvaux did believe that, the confidential informant did not say that *plaintiff* wanted to "get" the security director, so there would be no conflict of interest with respect to plaintiff.

Second, plaintiff says that Delvaux relied on the incident report he signed in his disciplinary decision.  In the report, a correctional officer named Vandewalle alleged that a prisoner named Edward Jackson stated,  "They think they can stop it but they can't.  They can't send everyone to Boscobel . . . We're still going to make this happen."  Dkt. #68-1.  Although Delvaux mentioned Jackson's statement in the disciplinary decision, the incident report does not indicate that Delvaux did anything other than acknowledge the report and send it on to other officials. Vandewalle is identified as the officer who completed the report and plaintiff cites no evidence that Delvaux was involved in investigating the report. Merritt, 721 F.2d at 601 (no conflict of interest for officer "merely signing a report as ranking officer with no connection to the incident").

Third, plaintiff says that Delvaux "relabeled alleged [confidential informant] statements from a [conduct report] other than [plaintiff's conduct report] and wrote [plaintiff's] name on them and submitted against [plaintiff], but used the same circumstance . . . as the basis to find prisoner Joseph Jordan not guilty."  Plt.'s Br. dkt. #67, at 9-10.  Plaintiff does not explain this argument in his brief, but simply cites several of his responses to defendants' proposed findings of fact. These responses are not much clearer than

20

plaintiff's brief, but my understanding of the argument is that Delvaux was biased because of a change he made to the "summary of confidential informant statements" provided to plaintiff at the disciplinary hearing.  In particular, under the heading "conduct report number," Delvaux crossed out "1886084" and replaced it with the number for plaintiff's conduct report, "1886143."  Dkt. #38-2 at 4.  Defendants say that the change simply reflects the fact that the summary was used in multiple disciplinary hearings for different prisoners, so it was an oversight that the wrong conduct report was listed on the document at plaintiff's hearing.  Dft.'s PFOF ¶¶ 88-90, dkt. #74.  Plaintiff identifies no reason to question Delvaux's statement that the change was anything other than a correction of a typographical error.  Although he says that another prisoner's conduct report was dismissed for a similar error, the document he cites does not support that argument.  Rather, it states that Delvaux dismissed the other prisoner's charges because of  "myriad . . . errors related to witness testimony, or lack thereof and the lack of summarized confidential informant statements that should have been provided to the accused."  Dkt. #69-1.  Because plaintiff does not show that similar errors occurred in his case, the dismissal of the other prisoner's conduct report is not probative of bias.

Finally, plaintiff says that Delvaux's bias is shown by his decision to travel from the Green Bay prison to the Boscobel prison in order to preside over plaintiff's disciplinary hearing instead of allowing Boscobel staff to handle the case.  However, plaintiff does not cite any evidence that Delvaux treated plaintiff differently from any of the other transferred prisoners in this respect and he does not identify any other reason for inferring that

Delvaux's decision is evidence of bias against plaintiff.  Although plaintiff says that Boscobel staff resolved other disciplinary charges against him that arose while he was at the Green Bay prison, I cannot infer bias from that difference in the absence of any evidence of the reasons behind those decisions and the individuals who made the decisions.

ORDER

IT IS ORDERED that

1.  The motion for summary judgment filed by defendants William Swiekatowski, Gary Boughton, Patrick Brandt, Michael Delvaux and William Pollard, dkt. #33, is DENIED as to the claim of  plaintiff Mustafa-El K.A. Ajala (formerly known as Dennis Jones-El) that defendant Swiektowski issued a conduct report against plaintiff because of his race and religion.

2.  Defendants' motion for summary judgment is GRANTED in all other respects.

3.  Because of a conflict in the court's schedule, the trial in this case is RESCHEDULED for August 24, 2015 at 9:00 a.m. with a final pretrial conference at 8:30 a.m. the same morning. Rule 26(a)(3) Disclosures and all motions in limine are due July 23,

2015 and objections are due August 7, 2015,

Entered this 10th day of April, 2015.

                              BY THE COURT:

                              /s/
                              BARBARA B. CRABB
                              District Judge