IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MUSTAFA-EL K.A. AJALA
formerly known as Dennis E. Jones-El,

                                                                     OPINION and ORDER

        Plaintiff,

                                                                     13-cv-638-bbc

    v.

WILLIAM SWIEKATOWSKI,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Plaintiff Mustafa-El Ajala is proceeding on a claim that defendant William Swiekatowski gave plaintiff a conduct report because plaintiff is an African American and a Muslim. A trial is scheduled for August 24, 2015. This order addresses the parties' motions in limine.

        In addition, plaintiff has responded to the court's request to identify the DVDs of interviews that he wishes to introduce at trial. Dkt. #137. Plaintiff lists three interviews, all of which were conducted by defendant. The court has a copy of two of the three interviews (with prisoners Todd Hivala and Stanley Felton). Dkt. #85. The court appreciates and accepts defendant's offer to bring the third DVD (recording an interview between defendant and plaintiff) to trial. Dkt. #95. The parties should be prepared to discuss the relevance of the interviews during the final pretrial conference.

1

OPINION

A. Plaintiff's Motions in Limine

1. "Motion No. 1"

In his first motion, plaintiff asks for "a more diverse jury pool, one that has a reasonable number of black persons." Dkt. #120 at 1. He cites Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991), for the proposition that individuals may not be excluded from jury service because of their race.

Plaintiff is correct that citizens of all races have a right (and obligation) to serve on a jury. That view is reflected in the jury plan for the Western District of Wisconsin, which I have attached to this order. The plan states:

> All litigants entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division where the court convenes. All citizens in the district shall have the opportunity to be considered for service on grand and petit juries of this court, and shall have an obligation to serve as jurors when summoned for that purpose.
>
> No citizen shall be excluded from service as a grand or petit juror in this court because of race, color, religion, sex, national origin, or economic status.

Consistent with the plan, the goal of this court is to obtain a jury pool that is as diverse as the community that the court serves. As described in the plan, this district uses voting records in an attempt to create a jury pool that represents a fair cross section of the community. However, that does not mean that a litigant has a constitutional right to a jury of a particular racial makeup. Potential jurors are selected randomly from voting lists, so there is no guarantee that any one jury will include members of any particular group of

people. Of course, if plaintiff believes that defendant has attempted to strike a juror on the basis of race, plaintiff may raise an objection at that time. Further, if plaintiff has suggestions for improving this district's jury plan in any respect, he is free to put his suggestions in writing and send them to the court for consideration for future cases.

2. "Motion No. 2"

This motion is plaintiff's request to wear street clothes at the trial. I addressed this issue in a previous order, so it is not necessary to discuss it again. Dkt. #135. If plaintiff has another trial in this court in the future, he should raise this issue in a separate motion rather than including it in his motions in limine so that the court can address it right away.

3. "Motion No. 3"

Plaintiff asks the court to exclude evidence of (1) his prior convictions and (2) his disciplinary history within the prison, except the conduct report at issue in this case. With respect to his prior convictions, plaintiff does not identify a particular conviction, but he says that all of his convictions should be excluded under Fed. R. Evid. 403 and 609(b) "because they are more than 10 years old and their prejudicial effect outweighs any probative value they could have." Dkt. #120 at 2. Under Rule 609(b), the burden for admitting a conviction shifts to the proponent "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Under Fed. R. Evid. 403, otherwise admissible evidence may be excluded if the opponent shows that the unfair

prejudice caused by evidence of the convictions substantially outweighs its probative value.

Plaintiff does not cite any evidence to support his allegation that his convictions meet the requirements of Rule 609(b) and he does not develop an argument regarding unfair prejudice under Rule 403. In his opposition brief, defendant cites four judgments of conviction: (1) a 1991 conviction for armed robbery (exhibit 514); (2) a 1994 conviction for conspiracy to commit perjury (exhibit 513); (3) 1995 convictions for armed robbery, possession of a short-barreled shotgun and possession of a firearm as a felon (exhibit 512); and (4) 1996 convictions for possession of cocaine and marijuana (exhibit 511). Defendant seems to concede that the 1991 conviction should be excluded under Rule 609(b). Dft.'s Br., dkt. #131 at 2 ("It appears that he was released from confinement for [the 1991] conviction over 10 years ago."). In addition, defendant says that plaintiff has 1995 misdemeanor convictions for drug possession, but defendant does not wish to introduce those. Id. at 3. Accordingly, I am granting plaintiff's motion as to the 1991 robbery conviction and 1995 misdemeanor convictions.

Defendant says that the remaining convictions listed above are admissible under Rule 609, but I cannot determine from the judgments themselves which of the convictions plaintiff is serving or whether it has been more than 10 years since plaintiff completed a particular sentence. Further, defendant does not develop an argument that any particular conviction should be admitted even if it is more than 10 years old. Accordingly, if defendant wishes to introduce any of those other convictions, he will have to show at the final pretrial conference that the conviction satisfies Rule 609. To the extent that defendant is able to

show that any of the prior convictions are admissible, defendant will be limited to revealing "the title, date, and disposition of the offense." United States v. Lewis, 641 F.3d 773, 783 (7th Cir. 2011).

With respect to plaintiff's disciplinary history, defendant says that it is relevant because plaintiff "argues that Swiekatowski's conduct report is the reason he was in WSPF and administrative confinement until his release from this status in July of 2015." In response to this anticipated argument by plaintiff, defendant wants to produce evidence that other misconduct by plaintiff played a role in those decisions. However, that is an argument about damages, not liability. Under 42 U.S.C. § 1997e(e), a prisoner such as plaintiff cannot recover damages for the emotional distress caused by things such as a prison transfer or being housed in segregation unless the plaintiff first shows that he suffered a physical injury. Pearson v. Welborn, 471 F.3d 732, 744-45 (7th Cir. 2006). As I will discuss in the context of defendant's motions in limine, plaintiff has not identified a physical injury that defendant's conduct caused him, so he cannot obtain damages for emotional distress. Because plaintiff has not identified any economic or other compensable damages caused by his transfer or placement in segregation, the question whether defendant's conduct caused the transfer or placement in segregation is not a relevant issue for trial.

If plaintiff cannot argue at trial that the conduct report was the reason he had a less desirable housing placement, then defendant does not need to rebut that argument with evidence that other disciplinary conduct contributed to that placement. Further, because defendant identifies no reason that plaintiff's disciplinary history would be relevant to any

issue related to liability, I am granting this aspect of plaintiff's motion.

4. "Motion No. 4"

Finally, plaintiff seeks to compel discovery from defendant on multiple issues. However, as I explained to plaintiff in the pretrial preparation order, the purpose of motions in limine is to resolve trial-related evidentiary issues. If plaintiff had a concern about discovery, he should have filed a separate motion to compel. In any event, under the scheduling order for this case, the period for obtaining discovery ended on July 2, 2015, dkt. #29 at 8, but plaintiff did submit his motion until several weeks later, so I am denying this motion as untimely.

B. Defendant's Motions in Limine

1. Motion to exclude evidence or argument related to compensatory damages

As noted above, 42 U.S.C. § 1997e(e) bars a prisoner from recovering "for mental or emotional injury" unless he shows first that he suffered a "physical injury." (Section 1997e(e) allows emotional damages for a "sexual act" as well, but neither side suggests that a sexual act is relevant to this case.) In this case, plaintiff says that defendant's conduct caused him to suffer from a painful foot condition called plantar fasciitis. Plaintiff says that defendant's conduct report caused his plantar fasciitis because the conduct report led to his placement in segregation, where he had to wear less comfortable shoes that led to his foot condition.

6

Plaintiff does not object to defendant's argument that general principles of causation under § 1983 and tort law apply to § 1997e(e). Under those principles, a person is "responsible for the natural consequences of his actions." Monroe v. Pape, 365 U.S. 167, 187 (1961). In other words, the plaintiff must show that "the injury is of a type that a reasonable person would see as a likely result of his or her conduct." Whitlock v. Brueggemann, 682 F.3d 567, 582-83 (7th Cir. 2012) (internal quotations omitted).

In this case, the connection between the conduct report and plaintiff's foot condition is simply too remote to say that defendant "caused" the condition in the legal sense. Even if I accept plaintiff's deposition testimony that defendant knew it was likely that plaintiff would be placed in segregation and that the shoes in segregation were different from the shoes in general population, dkt. #130 at 115-16, plaintiff does not cite any evidence to support the view that defendant had any reason to believe that the shoes would cause plantar fasciitis or that the prison's medical staff would not address any medical concerns that plaintiff had about his shoes. The shoes themselves and the failure to treat plaintiff's condition are "intervening" causes that would make plaintiff's alleged injury unpredictable for someone in defendant's position issuing a conduct report. Martinez v. State of California, 444 U.S. 277, 285 (1980) (parole board could not be held liable for murder committed by parolee five months after board decided to release him; "decedent's death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law"); Hibma v. Odegaard, 769 F.2d 1147, 1156 (7th Cir. 1985) (officers who framed plaintiff for crimes he did not commit could not be held liable for sexual assaults

7

that occurred while plaintiff was incarcerated).

Plaintiff also says that he "should be allowed to attest to and obtain damages on the conditions in segregation he endured which left him physically injured," dkt. #136 at 2, but the only "condition" he discusses other than shoes are restraints that he says he had to wear while in segregation. Id. (citing Plt.'s Dep., dkt. #130, at 108-09). In his deposition, plaintiff says generally that the restraints are "painful to walk around in," dkt. #130 at 109, but he provides no details, so it is questionable whether plaintiff's testimony is sufficient to show that the restraints are a "physical injury" under § 1997e(e). In any event, if plaintiff had concerns about his restraints, the responsibility for addressing those concerns would fall on the staff supervising him in the segregation unit, not on the officer who issued plaintiff a conduct report. Accordingly, I am granting defendant's motion to exclude evidence of plaintiff's physical and emotional injuries.

2. <u>Motion to bar plaintiff from seeking injunctive relief in the form of expungement of his conduct report</u>

Defendant argues that plaintiff may not seek an injunction to expunge his conduct report, even if he proves that defendant violated his constitutional rights by issuing the conduct report. However, expungement has long been recognized as an appropriate remedy for a discriminatory disciplinary decision. E.g., <u>Sherkow v. State of Wisconsin Dept. of Public Instruction</u>, 630 F.2d 498, 504 (7th Cir. 1980). Defendant cites <u>Johnson v. Litscher</u>, 260 F.3d 826 (7th Cir. 2001), in support of his argument, but the issue in <u>Johnson</u> was

whether the prisoner in that case could challenge an allegedly retaliatory prison transfer in a civil action under 42 U.S.C. § 1983 rather than in a petition for a writ of habeas corpus. The court did not hold that a prisoner could not seek expungement of a retaliatory conduct report in an action under § 1983.

Alternatively, defendant says that an order of expungement is barred by the <u>Rooker-Feldman</u> doctrine because a state circuit court upheld the conduct report in a decision in several years ago. However, the <u>Rooker-Feldman</u> doctrine is limited to cases in which the plaintiff's alleged injury is the state court judgment itself; the doctrine does not apply "if a plaintiff contends that out-of-court events have caused injury that the state judiciary failed to detect and repair." <u>Iqbal v. Patel</u>, 780 F.3d 728, 730 (7th Cir. 2015). Defendant does not suggest that the state court addressed defendant's alleged discrimination, so <u>Rooker-Feldman</u> does not apply. To the extent that claim preclusion might apply, defendant forfeited that argument by failing to raise it earlier in the case.

If the jury renders a verdict in favor of plaintiff, defendant will have another opportunity to raise any objections he has before any injunctive relief is ordered. At this stage, however, defendant has not shown that expungement is not an appropriate remedy.

3. <u>Motion to preclude plaintiff from arguing that he was disciplined for engaging in speech protected by the First Amendment</u>

In the summary judgment opinion, I dismissed plaintiff's claim that prison officials disciplined him in violation of his right to free speech, so defendant says that plaintiff should

9

be precluded from making any arguments at trial that are inconsistent with that ruling. Plaintiff does not respond directly to this motion and I see no reason why plaintiff would be permitted to contradict a previous ruling by the court, so I am granting this motion.

However, this ruling does not prohibit plaintiff from presenting evidence that defendant did not honestly believe that the petition plaintiff circulated included objectionable content. That evidence does not show that plaintiff was engaging in protected speech. As I noted in the summary judgment opinion, defendant's opinion is irrelevant as to that issue because the standard under the First Amendment is objective. Dkt. #75 at 12 (citing Hammer v. Ashcroft, 570 F.3d 798, 803 (7th Cir. 2009)). However, if defendant told plaintiff that he (defendant) did not have a problem with the petition, but then issued plaintiff a conduct report that included a charge that the petition violated prison rules, defendant's earlier statement could be evidence of pretext, which would be evidence of discriminatory intent because it suggests that defendant may be trying to hide the true motive for his decision. Simple v. Walgreen Co., 511 F.3d 668, 671 (7th Cir. 2007).

4. Motion to exclude evidence or argument of other acts of discrimination and statistical evidence

To prevail on his claim, plaintiff must show that *defendant* acted with discriminatory intent, so other acts of alleged discrimination by anyone other than defendant are not relevant. However, courts have recognized that a defendant's treatment of others in plaintiff's group may be circumstantial evidence of discrimination. Hasan v. Foley & Lardner

LLP, 552 F.3d 520, 529 (7th Cir. 2008) ("Our precedents establish . . . that behavior toward or comments directed at other employees in the protected group is one type of circumstantial evidence that can support an inference of discrimination.") (citing Sprint/United Management Co. v. Mendelsohn, 552 U.S. 379 (2008); Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 491 (7th Cir. 2007); Phelan v. Cook County, 463 F.3d 773, 781 (7th Cir. 2006)). "[W]hether such evidence is relevant depends on a variety of factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." Id. Unfortunately, neither side identifies any specific examples of other allegedly discriminatory acts by defendant, so I cannot provide the parties further guidance at this time.

The same conclusion follows with respect to statistical evidence. Although the probative value of statistical evidence is limited, courts have not held that all statistical evidence is inadmissible in a discrimination case. Matthews v. Waukesha County, 759 F.3d 821, 829-30 (7th Cir. 2014); Norman-Nunnery v. Madison Area Technical College, 625 F.3d 422, 431 (7th Cir. 2010). Again, however, the parties do not identify any particular statistical evidence that plaintiff might wish to submit.

If plaintiff wishes to present statistical evidence or evidence of other discriminatory treatment by defendant of other African Americans or Muslims, plaintiff should be prepared to identify that evidence at the final pretrial conference. At that time, defendant will have an opportunity to object to any particular evidence plaintiff identifies before the court issues a ruling.

5. <u>Motion to permit defendant to introduce evidence of plaintiff's prior convictions</u>

I discussed this motion in the context of plaintiff's motion to exclude these convictions, so I do not need to address this issue again.

6. <u>"Supplemental" motion to exclude evidence of physical injuries</u>

Two weeks after the deadline for submitting motions in limine, defendant filed a "supplemental" motion to exclude evidence of plaintiff's physical injuries on the ground that plaintiff does not have expert testimony to show what caused those injuries. Defendant does not provide any excuse for missing the deadline, but I need not decide whether defendant forfeited this issue because I am granting defendant's motion to exclude evidence of physical injuries on other grounds. In future cases, counsel should comply with all pretrial deadlines or show cause why she has been unable to do so.

ORDER

IT IS ORDERED that

1. The motions in limine filed by plaintiff Mustafa-El Ajala (formerly known as Dennis Jones-El), dkt. #120, are GRANTED in the following respects:

(a) defendant William Swiekatowski may not introduce evidence of plaintiff's disciplinary history other than the conduct report plaintiff received in this case; and

(b) defendant may not introduce evidence of plaintiff's 1991 conviction for armed robbery or his 1995 misdemeanor convictions for drug use.

Plaintiff's motions in limine are DENIED in all other respects.

2. Defendant William Swiekatowski's motions in limine, dkt. ##105 and 134, are GRANTED in the following respects:

(a) plaintiff may not present evidence or argument of physical or emotional injuries;

(b) plaintiff may not argue in front of the jury that he was disciplined for engaging in speech protected by the Constitution;

(c) plaintiff may not introduce evidence of alleged discrimination by anyone other than defendant.

Defendant's motions in limine are DENIED in all other respects.

Entered this 19th day of August, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge



United States District Court for the Western District of Wisconsin

Plan for the Random Selection of Grand and Petit Jurors for Service in the Western District of Wisconsin

April 2013

**Introduction**

Pursuant to the Jury Selection and Service Act of 1968, as amended, 28 U.S.C. § 1861 et. seq., the Judges of the United States District Court for the Western District of Wisconsin adopt the following plan for the random selection of grand and petit jurors subject to the approval of the reviewing panel for the Seventh Circuit, and to such rules and regulations as may be adopted by the Judicial Conference of the United States.  When approved, this plan will supersede the jury plan now in effect.

**Policy**

All litigants entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division where the court convenes. All citizens in the district shall have the opportunity to be considered for service on grand and petit juries of this court, and shall have an obligation to serve as jurors when summoned for that purpose.

No citizen shall be excluded from service as a grand or petit juror in this court because of race, color, religion, sex, national origin, or economic status.

**Jury Divisions**

The Western District of Wisconsin is divided into five divisions for jury selection purposes:

| Jury Divisions | Counties |
| --- | --- |
| Eau Claire | Chippewa, Clark, Dunn, Eau Claire, Pepin, Pierce, St. Croix, Taylor |
| La Crosse | Buffalo, Crawford, Grant, Jackson, La Crosse, Monroe, Richland, Trempealeau, Vernon |
| Madison | Columbia, Dane, Green, Iowa, Jefferson, Lafayette, Rock, Sauk |
| Superior | Ashland, Barron, Bayfield, Burnett, Douglas, Iron, Polk, Price, Rusk, Sawyer, Washburn |
| Wausau | Adams, Juneau, Lincoln, Marathon, Oneida, Portage, Vilas, Wood |

**Management and Supervision of the Jury Selection Process**

The clerk of court shall manage the jury selection process in the Western District of Wisconsin. In doing so the clerk shall act under the supervision and control of the chief judge of this district.

The clerk may use any reasonable electronic or manual means to perform a random selection process under this plan, including entering into contracts with state election officials.  These means may also be employed in the performance of other clerical and record keeping functions as may be prescribed by the court.

**Source of Names of Prospective Jurors**

The names of prospective jurors shall be selected from the official lists of actual voters in the political subdivisions of the relevant division in the most recent presidential election.  The court has determined that this source of jurors provides representation from a fair cross section of the community.  New source lists shall be obtained every four years from state and local officials as soon as possible after the presidential election.

**Master Jury Wheels**

The clerk shall maintain a master jury wheel for each division within the district.  The wheels shall consist of the names and addresses of persons randomly selected from the lists of actual voters from the respective divisions.  As a minimum, one thousand (1,000) names shall be selected initially for each division.  The chief judge may order the clerk to place additional names in the master jury wheels should the initial estimate prove inadequate for the four-year period.

The master jury wheels shall be replaced once every four (4) years, no later than one year following the presidential election.  The court will continue to use the existing wheels until all created petit panels have completed their term of service.  At that time, the new master wheels will be used.

**Method and Manner of Random Selection of Names for the Master Jury Wheels**

The selection of persons from complete actual voter lists in electronic media for the master jury wheel will be accomplished by a purely randomized process through a properly programmed electronic data processing system.  For each jury division, persons will be selected randomly by a computer program to form, successively, the master jury wheel and the qualified jury list. Persons determined to be qualified for service will be used for grand or petit jury service.  This automated random selection of names must ensure that each county within the jury division is proportionally represented.  The selection of names from the lists of actual voters and the master jury wheel must also ensure that the mathematical odds of any single person being selected are substantially equal.

Any court authorized computer service provider contracted to create a computer program must comply with all instructions provided by the clerk and the plan.  The provider must execute a declaration that services comply with the instructions and the plan.

**Drawing of Names from the Master Jury Wheels, One-Step Summoning and Juror Qualification**

The clerk shall draw at random from the master jury wheels, the names of as many persons as may be required to qualify and summon a sufficient number of jurors for a term of service.  The number of persons to be drawn shall be determined based upon anticipated juror demands by the court plus a margin of extra names sufficient to compensate for the estimated number that will turn out to be unavailable or ineligible.

The clerk shall prepare and mail to every person whose name is drawn at random from the master jury wheels a summons and a juror qualification form that has been prescribed by the Administrative Office of the United States Courts and approved by the Judicial Conference of the United States.  The summons and qualification form shall include instructions that a prospective juror complete and return the form to the clerk or respond to the court's Internet website within ten (10) days.   If a person is unable to complete the form, then another shall complete it, and the preparer shall indicate the reason therefor.  In any case in which it appears that there is an omission, ambiguity, or error in a questionnaire, the clerk shall return it with instructions to the person to make additions or corrections and to return it or electronically file it within ten (10) days.

If any person fails to respond as instructed, then the clerk may send a warning letter requesting immediate return or electronic filing of the completed questionnaire and disclosing the possible ramifications of inaction.  At the time of the scheduled appearance for jury service, or prior thereto, any person may be summoned to fill out another juror qualification questionnaire in the clerk's presence.  If warranted, the person may be questioned, but only with regard to his/her responses to questions on the questionnaire.  The clerk shall note on the questionnaire any information provided and shall transmit it to the chief judge.  In the event that any person summoned by the clerk fails to appear as directed the court may order the person to appear before it and to show cause for failure to comply with the summons.

**Qualifications for Jury Service**

All prospective jurors shall be deemed qualified to serve on grand and petit juries in this district unless the person:

a. is not a citizen of the United States, at least eighteen (18) years old who has resided within the judicial district for at least one year;
b. is unable to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form;
c. is unable to speak the English language;
d. is incapable, by reason of mental or physical infirmity, to render satisfactory jury service; or
e. has a charge pending for the commission of, or has been convicted in a state or federal court of record of, a crime punishable by imprisonment for more than one (1) year and that person's civil rights have not been restored.

**Exemption from Jury Service**

Full-time members of the following groups or classes shall be barred from jury service on the ground that they are exempt:

a. members in active service of the Armed Forces of the United States;
b. members of any fire or police departments; or
c. public officers in the executive, legislative, or judicial branches of the Government of the United States, or the State of Wisconsin, or any subdivision of the State, who are actively engaged in the performance of official duties. "Public officer" shall mean a person who is either elected to public office or who is directly appointed by a person elected to public office.

**Excuses from Jury Service**

Members of the following groups or classes shall, by individual request, be excused from jury service:

a. a person over 70 years of age; or
b. a person who serves without compensation for a public agency as a firefighter or member of a rescue squad or ambulance crew.

In addition to the above groups, a judge of this court or clerk, under supervision of the court, may temporarily excuse any person summoned for jury service upon a showing of undue hardship or extreme inconvenience. At the conclusion of a juror's temporary excuse period, such person either shall be deferred until another date during their term of service, or be reinserted into the master jury wheel to be summoned again for jury service.

**Determination of Qualifications, Exemptions, and Excuses**

The chief judge or the clerk, under the supervision of the court, shall determine solely on the basis of information provided on the juror qualification form and other competent evidence whether a person is unqualified for jury service, exempt from such service, or eligible for an excuse. The clerk shall enter any such determination in the space provided on the juror qualification form or on the juror's record in the database.

**Qualification and Summoning of Jurors**

For each jury division, the clerk shall draw at random from the master jury wheel as many persons as required to be qualified and summoned for a specific term of service and for assignment to petit or grand jury panels. The clerk shall insure that at all times sufficient names are contained in each wheel to satisfy the requirements of that division.

The clerk shall prepare a separate list of names of persons assigned to each petit and grand jury panel. A list of petit jurors shall be available to the parties in a case on the Friday before their scheduled trial, unless otherwise directed by the chief judge or the judge assigned to try the case. At the time such a list is disclosed to the parties, the list of petit jurors shall be made available at the clerk's office to the public and the media upon written request and upon authorization by the chief judge or presiding judge. The chief judge or the presiding judge may order such list to be kept confidential in any case where the

interests of justice so require.  Lists of grand jurors shall not be disclosed except as directed by the chief judge.

**a.   Summoning Petit Jurors**

Persons whose names are selected and then qualified from the master jury wheel shall be called to appear as prospective jurors for trials in their respective divisions unless otherwise directed by the chief judge or the judge assigned to try the case.

**b.   Selecting Petit Jurors**

The clerk shall select a jury panel for a scheduled trial by randomly drawing names from the jurors summoned.  If the current pool for a division contains more jurors than reasonably needed for a specific case, then the clerk shall randomly select the number of jurors to be called.  The clerk may grant requests for excuses by panel jurors for good reason.  28 U.S.C. § 1869(j)

If two or more jury trials are to commence on the same day in the same city in this district, then a central jury pool shall be used.  The names of the jurors summoned and appearing for service shall constitute one petit jury pool from which the clerk will randomly select trial panels.

**c.   Summoning Grand Jurors**

When the court orders empanelment of a grand jury, the clerk shall draw at random from the master jury wheels the names of as many persons as may be required for grand jury service.  The clerk shall select a proportionate share of names from the master jury wheels for each of the five divisions.  The proportionate share shall be based on the total number of persons in the source list for each division compared to the total number of persons on the source list for the entire district.  The clerk shall issue a summons and qualification form for each person selected.

**Terms of Service**

Persons summoned shall not serve twice within a two-year period; no person shall be required to serve for prospective service as a petit juror for a total of more than thirty days, except when necessary to complete a particular case.  During the term of service, no person shall be required to serve in more than 1 (one) jury trial.  A person may not serve on more than one grand jury, or serve as both a grand juror and petit juror in any two-year period.  Jurors empaneled to a grand jury shall serve for a term not to exceed eighteen (18) months in accordance with Fed. R. Crim. P. 6(g) unless otherwise extended by the court.

**Obligation to Serve**

When summoned to serve as a juror, every person shall be obligated to serve unless determined to be disqualified, exempt, excluded or entitled to be excused.  Failure to appear as directed may result

in an order from the court to appear and show cause for failure to comply with the summons.  Any person who fails to appear pursuant to such order or fails to show cause for noncompliance with the summons or who willfully misrepresents a material fact on a jury qualification form for the purpose of avoiding or securing service as a juror may be punished as provided in 28 U.S.C. § 1864(b) and 1866(g).

**Unanticipated Shortage of Jurors**

If there is an unanticipated and immediate shortage of available petit or grand jurors, the court may require the United States Marshal to summon a sufficient number of jurors selected at random from the source list specified in this plan, in a manner ordered by the court consistent with sections 1861 and 1862 of the act, as amended.

**Disclosure of Records**

The contents of records or papers used by the clerk in connection with the jury selection process shall not be disclosed except when disclosure is allowed as set forth in this plan, or when disclosure is required in accordance with 28 U.S.C. §§ 1867 and 1868.